Nicholas I. Porritt (admitted *pro hac vice*)
Adam M. Apton (admitted *pro hac vice*)
LEVI & KORSINSKY LLP
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
nporritt@zlk.com
aapton@zlk.com

*Attorneys for Lead Plaintiff Henry Low
and Lead Counsel for the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ENERGY RECOVERY INC. SECURITIES LITIGATION | Master Docket No. 3:15-CV-00265-EMC <br><br> CLASS ACTION <br> NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF THE SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> Hon. Edward M. Chen <br><br> Date: Thursday, August 24, 2017 <br> Time: 1:30 p.m. <br> Courtroom: 5, 17th Floor |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, pursuant to an Order of the Court issued on April 11, 2017 ("Preliminary Approval Order"), on August 24, 2017, or as soon thereafter as counsel may be heard, at the United States Court, Northern District of California, Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Edward M. Chen, Lead Plaintiff Henry Low ("Plaintiff") will move pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and Rule 408 of the Federal Rules of Evidence, for an order certifying the Class, as defined herein, for settlement purposes only, granting final approval of the proposed settlement (the "Settlement"), and

approval of the proposed plan of allocation of the proceeds of the Settlement (the "Plan of Allocation"), as set forth in the Stipulation, between Plaintiff and Defendants.

1. This motion is supported by the accompanying Memorandum of Points and Authorities in Support; the Declaration of Adam M. Apton in Support of Plaintiff's Motion for Certification of the Class for Settlement Purposes, Final Approval of the Settlement, Approval of the Plan of Allocation, and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, dated July 21, 2017 (the "Apton Decl."), and the exhibits filed therewith; the Affidavit of Jose C. Fraga Regarding Mailing Of Notice of Pendency and Proposed Settlement of Class Action and Claim Form, Publication Requests for Exclusions and Objections to the Settlement Received to Date, dated July 21, 2017 (the "Fraga Decl."), Declaration of Henry Low in Support of Approval of Proposed Class Action Settlement and Application for Reimbursement of Time and Expenses, dated July 18, 2017 ("Low Decl."), and the exhibits filed therewith; the Stipulation and the exhibits filed therewith (ECF No. 131); and the Amended Stipulation and the exhibits filed therewith (ECF No. 139); and all other pleadings and papers filed in this action.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Notice satisfied due process and the complied with Fed. R. Civ. P. 23(e);
2. Whether the Plan of Allocation is fair, reasonable, and adequate;
3. Whether the Court should finally certify the Class and whether the Plaintiff and their counsel have adequately represented the Class;
4. Whether the Settlement, on the terms and conditions provided for in the Amended Stipulation of Settlement, dated as of April 3, 2017 (the "Amended Stipulation"), should be finally approved by the Court as fair, reasonable, and adequate; and
5. Whether the Court should permanently enjoin the assertion of any claims that arise from or relate to the subject matter of the Action.

1

**TABLE OF CONTENTS**

2  NOTICE OF MOTION AND MOTION ...................................................................... i

3  TABLE OF AUTHORITIES ................................................................................ v

4  MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

5  PRELIMINARY STATEMENT ......................................................................... 1

6  STATEMENT OF FACTS ................................................................................. 2

7  ARGUMENT ..................................................................................................... 7

8       I. STANDARDS FOR APPROVAL OF CLASS ACTION
           SETTLEMENTS ...................................................................... 7

9

10     II.    THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD
            FOR APPROVAL ................................................................. 9

11         A.    The Parties Were Able to Assess the Strengths and
              Weaknesses Of Their Cases ........................................... 9

12

13         B.    The Settlement Appropriately Balances the Risks of Litigation
              and the Benefit to the Class of a Certain Recovery ....... 9

14         C.    The Settlement Amount Supports Approval of the Settlement .... 14

15         D.    The Recommendation of Experienced Counsel Heavily Favors
              Approval of the Settlement ........................................... 16

16

17         E.    Reaction of the Class Supports Approval of the Settlement ........ 17

18     III.   THE PLAN OF ALLOCATION IS FAIR AND RESONABLE AND
            SHOULD BE APPROVED BY THE COURT ...................... 17

19     IV.   CERTIFICATION OF THE SETTLEMENT CLASS UNDER FED.
            R. CIV. P.23 IS APPROPRIATE .......................................... 18

20

21         A.    The Class is Sufficiently Numerous ............................. 19

22         B.    Common Questions of Law or Fact Exist ..................... 19

23         C.    Plaintiff's Claims are Typical of those of the Class ..... 20

24         D.    Plaintiff are Adequate Representatives of the Class ..... 20

25         E.    The Requirements of Rule 23(b)(3) are also Satisfied ... 21

26         1.    Common Legal and Factual Question Predominate ..... 21

27         2.    A Class Action is the Superior Means to Adjudicate Lead
              Plaintiff's and Settlement Class Members' Claims ..... 22

28

1

V.      THE NOTICE SATISFIED THE REQUIREMENTS OF DUE
PROCESS ............................................................................................. 22

CONCLUSION ................................................................................................... 23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*,
No. 10-0059, 2012 U.S. Dist. LEXIS 181281 (E.D. Cal. Dec. 18, 2012) .................................... 18

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................................ 21, 22

*In re Apple Computer Sec. Litig.*,
No. 84-20148, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) .................................... 14

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ................................................................................... 10, 11

*City of Brockton Ret. Sys. v. Shaw Grp., Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008) ...................................................................................... 12

*Class Plaintiff v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) .................................................................................................. 19

*Daubert v. Merrell Dow Pharms. Inc.*,
509 U.S. 579 (1993) .................................................................................................................. 13

*DeJulius v. New England Health Care Employees Pension Fund*,
429 F.3d 935 (10th Cir. 2005) .................................................................................................. 23

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ..................................................................................................... 16

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .................................................................................................................. 23

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .................................................................................................... 21

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980) .................................................................................................. 16

*In re Equity Funding Corp. of Am. Sec. Litig.*,
603 F.2d 1353 (9th Cir. 1979) .................................................................................................. 23

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ............................................................................................... 11, 15

*Glass v. UBS Fin. Servs.*,
No. 06-4068, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ................................ 12, 14

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) .................................................................................................. 17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................................ 9, 20, 22

*In re Heritage Bond Litig.*,

v

No. 02-1475, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005)...............................passim

*Hicks v. Morgan Stanley & Co.*,
   No. 01-10071, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ....................................17

*Hughes v. Microsoft Corp.*,
   No. 98-1646C, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 21, 2001) .................................10

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......................................................................................18

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009)........................................9

*Lewis v. Newman*,
   59 F.R.D. 525 (S.D.N.Y. 1973).....................................................................................................11

*Linney v. Ala. Cellular P'ship*,
   No. 96-3008, 1997 U.S. Dist. LEXIS 243000 (N.D. Cal. July 18, 1997) .......................................9

*Lundell v. Dell, Inc.*,
   No. 05-3970, 2006 U.S. Dist. LEXIS 90990 (N.D. Cal. Dec. 4, 2006) ..................................10, 11

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) .........................................................................................................23

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)....................................................................................9, 10, 11, 19

*In re Mfrs. Life Ins. Co. Premium Litig.*,
   MDL No. 1109, 1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 21, 1998) ..................................14

*Mendoza v. United States*,
   623 F.2d 1338 (9th Cir. 1980).......................................................................................................23

*Milstein v. Huck*,
   600 F. Supp. 254 (E.D.N.Y. 1984).................................................................................................15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .......................................................................................................................23

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004).............................................................................................passim

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ..........................................................................................................10

*In re Novatel Wireless Secs. Litig.*,
   No. 08cv1689, 2013 U.S. Dist. LEXIS 16986 (S.D. Cal. Feb. 7, 2013) .......................................13

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .....................................................................................................passim

*In re Omnivision Tech., Inc.*,

559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................9, 15, 19

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...................................................................................................10

*Petrovic v. AMOCO Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ..............................................................................................19

*In re Qwest Commc'ns. Sec. Litig.*,
    No. 01-01451, 2006 U.S. Dist. LEXIS 71039 (D. Colo. Sept. 28, 2006) ....................................15

*Republic Nat'l Life Ins. Co. v. Beasley*,
    73 F.R.D. 658 (S.D.N.Y. 1977) ............................................................................................11

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ............................................................................................14

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ..............................................................................................20

*S.C. Nat'l Bank v. Stone*,
    749 F. Supp. 1419 (D.S.C. 1990) .........................................................................................19

*In re Skilled Healthcare Group, Inc.*,
    No. 09-5416, 2011 U.S. Dist. LEXIS 10139 (C.D. Cal. Jan. 26, 2011) .................................18, 20

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................................................9

*In re Synthroid Mktg. Litig*,
    264 F.3d 712 (7th Cir. 2001) ................................................................................................17

*In re THQ Inc. Sec. Litig.*,
    No. 00-1783, 2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002) ...........................20, 21, 22

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ...................................................................................................9

*In re Toyota Motor Corp. Unintended Acceleration Mktg.*,
    No. 10-2151, 2012 U.S. Dist. LEXIS 183941 (C.D. Cal. Dec. 28, 2012) .................................21

*In re Union Carbide Consumer Prods. Bus. Sec. Litig.*,
    718 F. Supp. 1099 (S.D.N.Y. 1989) ......................................................................................17

*In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*,
    122 F.R.D. 251 (C.D. Cal. 1988) ..........................................................................................22

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .................................................................................................9

*In re Warner Commc'ns Sec. Litigation*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ...............................................................................13, 16, 18

*West Virginia v. Chas. Pfizer & Co.*,

vii

314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971)....................................17

**Statutes**

Fed. R. Civ. P. 23(a) ................................................................................................20, 21

Fed. R. Civ. P. 23(b) ....................................................................................................22, 23

Fed. R. Civ. P. 23(e) ...........................................................................................................23

**Other Authorities**

Dr. Renzo Comolli and Svetlana, *Recent Trends in Securities Class Action Litigation: 2014 Full-Year Review* (NERA Feb. 2015) ...............................................................17

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2014 in Review and Analysis* (Cornerstone Research 2014) ...................................17

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Pursuant to the Preliminary Approval Order, this Court certified a class consisting of all those who purchased or otherwise acquired Energy Recovery common stock between March 7, 2013 and March 5, 2015, inclusive, and who were damaged thereby (*i.e.*, the "Class" and "Settlement Class Period"). The Settlement provides for payment by the Defendants to the Class of $3,850,000 plus interest (the "Settlement Fund"). As described in greater detail below, Garden City Group, LLC. (the "Claims Administrator") has published notice and disseminated almost 17,889 copies of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and the Proof of Claim and Release ("Proof of Claim"), (together, the Notice and Proof of Claim are referred to herein as the "Notice Packet"). As of July 20, 2017, neither counsel nor the Claims Administrator have received any objection to the terms of the Settlement or proposed Plan of Allocation, and only one potential Class member has requested exclusion (on the basis that he did not lose any money in connection with the stock).

Plaintiff submit that the Settlement of the Action on these terms represents an excellent result for the Class, and Plaintiff and Counsel for the Settlement Class ("Plaintiff's Counsel") are pleased to present the Settlement to the Court. Plaintiff's Counsel were able to obtain this result only after a thorough, but expeditious investigation of the facts and circumstances underlying Plaintiff's claims, including analysis of public documents; interviews and examinations of confidential witnesses; consultation with a damages expert; the preparation and filing of the thoroughly researched and detailed Consolidated Amended Class Action Complaint (the "Complaint"), as well as a mediation session, which included significant briefing. Given the assessment of Plaintiff's Counsel, after conducting their extensive factual and legal analysis of the relative strengths and weaknesses of the claims asserted in the Action against the Defendants and the large recovery of cash obtained for the Class without the delay usually experienced by Class members in securities class actions, Plaintiff believe the Settlement is a superb result. Prolonged litigation would have resulted in substantial reduction of available insurance proceeds, the only practical source of any recovery for the Class, through the payment of defense costs, with no guarantee of any increased recovery. The Class would

1

undoubtedly have been further delayed, and its recovery probably diminished, if the Settlement had not been agreed upon in October 2016.

Based on the amount obtained in Settlement versus the risk of obtaining a smaller or different judgment at trial, the certainty of a recovery versus the risks of no recovery at trial, Plaintiff's Counsel's extensive experience in other class actions, the serious disputes between the parties concerning damages and liability, and the favorable reaction of the Class, Plaintiff's Counsel firmly believe that this Settlement is fair, adequate, and reasonable, and recommend that the Settlement be approved by this Court.

## STATEMENT OF FACTS

### A.  Plaintiff's Claims and Allegations

The Action arises out of violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") based on allegations that Defendants disseminated materially untrue statements and omissions about Energy Recovery's products and operations. Plaintiff brings this action on behalf of all persons who purchased Energy Recovery common stock between March 7, 2013 and March 5, 2015, inclusive. Plaintiff's Second Amended Complaint alleges that Defendants represented to the public that its core products were operational and ready for commercial sale when, they were not. The Second Amended Complaint alleges that Energy Recovery's "core products" (*i.e.*, devices known as the IsoBoost, IsoGen, and IsoPro) were neither operable nor salable at any point during the Settlement Class Period. The Second Amended Complaint also alleges that engineering and design problems with regard to these products were reported to Defendants through various means on several occasions. The Second Amended Complaint further alleges that Defendants misrepresented the size and strength of the Company's "pipeline" of sales, including, statements representing that the Company's "pipeline" amounted to $100 million were materially misleading because the "pipeline" included sales opportunities that were very unlikely to materialize.

The Second Amended Complaint alleges that when the truth concerning the Company's "core products" and "pipeline" became known, Energy Recovery's stock price declined significantly. According to the Second Amended Complaint, the decline in Energy Recovery's stock price resulted

2

in substantial damages to the Settlement Class. The lawsuit seeks money damages against Defendants for alleged violations of the federal securities laws.

Defendants have denied and continue to deny each and all of the claims and contentions alleged by the Lead Plaintiff in the Litigation. Defendants continue to assert that they did not violate Sections 10(b) or 20(a) of the Exchange Act, in particular the elements of falsity, scienter and loss causation. Defendants deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Litigation, especially the central premise of Plaintiff's claims that Energy Recovery's products remained in the engineering prototype phase during the Class Period. Defendants assert that Energy Recovery was selling its IsoBoost products to commercial customers during the Class Period and that soon after the Class Period it was able to make second sales of IsoBoost to a major new customer. Defendants assert that Plaintiff is unable to prove falsity or scienter in support any of his allegations. Defendants also have denied and continue to deny, among other things, the allegations that the Plaintiff or the Settlement Class have suffered damages and that the Plaintiff or the Settlement Class were harmed by the conduct alleged in the Complaint or its predecessor complaints.

Defendants have denied and continue to deny all of the claims and contentions alleged by the Plaintiff in this litigation. Defendants expressly have denied and continue to vigorously deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the litigation.

**B. Procedural History and Lead Counsel's Investigation**

On January 20, 2015, an action was filed in the United States District Court for the Northern District of California as a putative securities fraud class action on behalf of purchasers of Energy Recovery common stock, captioned *Sabatino v. Rooney, et al.*, Case No. 3:15-cv-00265-EMC. One additional related securities class action lawsuit, *Mowdy v. Rooney, et al.*, Case No. 3:15-cv-00374 was subsequently filed. On May 5, 2015, the Court entered an order consolidating the related class actions as *In re Energy Recovery, Inc. Securities Litigation*, Case No. 3:15-cv-00265-EMC. ECF No. 37. The Court also appointed Henry Low, as Lead Plaintiff pursuant to Section 21 D(a)(3)(B) of the

Exchange Act and appointed Levi & Korsinsky LLP as Lead Counsel, and Punzalan Law as liaison counsel.

On June 11, 2015, Plaintiff filed the Class Action Consolidated Complaint for Violation of Federal Securities Laws. ECF No. 40. The Amended Complaint alleged violations of Sections 10(b) and 20(a) of the Exchange Act on behalf of a class of persons who purchased Energy Recovery common stock on May 8, 2014 through March 5, 2015, inclusive. The Amended Complaint alleged that Defendants made false and misleading statements regarding Energy Recovery's products and operations concerning the Company's oil and gas segment, and sought unspecified money damages and other relief.

On July 31, 2015, Defendants filed a motion to dismiss the Amended Complaint. ECF No. 45. Instead of opposing Defendants' motion, Plaintiff filed a motion for leave to amend the Amended Complaint on September 15, 2015. ECF No. 50. The Court granted Plaintiff's motion for leave to amend on October 8, 2015, while also denying Defendants' motion to dismiss as moot. ECF No. 58.

On October 9, 2015, Plaintiff filed the Amended Class Action Consolidated Complaint for Violation of Federal Securities Laws. ECF No. 59. Defendants moved to dismiss on November 9, 2015. ECF No. 64. The Court held a hearing on the motion on December 17, 2015, and subsequently issued an order denying in part and granting in part Defendants' motion on January 27, 2016. ECF No. 77.

On February 1, 2016, Plaintiff filed an emergency application for relief in an attempt to prevent the Company from allegedly destroying relevant evidence in the possession of a whistleblower. ECF No. 80. The Company denied attempting to destroy any relevant documents. On February 4, 2016, Plaintiff and the Company entered a stipulation resolving Plaintiff's emergency application, which the Court so-ordered on February 5, 2016. ECF No. 88.

On February 9, 2016, Plaintiff filed an administrative motion seeking leave to file a motion requesting a declaration concerning the terms of a non-disclosure agreement executed between Energy Recovery and a former employee. ECF No. 89. On February 11, 2016, the Court denied Plaintiff's administrative motion, but granted Plaintiff additional time to file a further amended complaint. ECF No. 91.

4

On March 2, 2016, Plaintiff filed a motion to intervene in a related case being brought by the former employee that was allegedly bound by the non-disclosure agreement referenced in the preceding paragraph. Docket No. 16-cv-477, ECF No. 28. Plaintiff sought to intervene in the related case for the purpose of opposing a motion filed by Energy Recovery seeking an order compelling the former employee to return documents and other materials Plaintiff believed to be relevant evidence in his class action case. The Court granted Plaintiff's motion to intervene on April 5, 2016. Docket No. 16-cv-477, ECF No. 53. The Court held a hearing in connection with Energy Recovery's motion to return documents on April 7, 2016, and subsequently issued an order granting in part and denying in part Energy Recovery's motion. Docket No. 16-cv-477, ECF Nos. 56-60.

Following additional investigation, on May 26, 2016, Plaintiff filed the Second Amended Complaint. ECF No. 99. The Second Amended Complaint alleged violations of Sections 10(b) and 20(a) of the Exchange Act on behalf of a class of persons who purchased Energy Recovery common stock on March 7, 2013 through March 5, 2015, inclusive. The Second Amended Complaint alleged that the Defendants made false and misleading statements regarding Energy Recovery's products and operations and seeks unspecified money damages and other relief. The Second Amended Complaint is the current operative pleading.

## C. Settlement Negotiations

Defendants moved to dismiss the Second Amended Complaint on June 13, 2016. ECF No. 100. The Court held a hearing on the motion on July 21, 2016. Following the hearing, but prior to receiving any decision on Defendants' motion from the Court, the parties agreed to attempt to resolve the matter through mediation. ECF No. 115.

On October 12, 2016, the parties participated in a mediation session with Robert A. Meyer, Esq. of JAMS. After a full day of negotiations, the parties reached an agreement in principle to settle the Litigation.

On November 28, 2016, the parties executed a Memorandum of Understanding.

On February 15, 2017, the parties executed the Stipulation.

On April 3, 2017, the parties executed the Amended Stipulation.

**Preliminary Approval and Notice**

The parties executed a Stipulation of Settlement on February 15, 2017 and an Amended Stipulation on April 3, 2017. On March 23, 2017, the parties appeared before the Court and, at that time, received provisional preliminary approval of the Stipulation of Settlement. On April 11, 2017, the Court entered the Preliminary Approval Order. ECF. No. 140. The Preliminary Approval Order, among other things,: (i) approved the Stipulation and the Settlement set forth therein and preliminarily certified the Class; (ii) set the final approval hearing for August 24, 2017; (iii) and set the deadlines for objections to the Settlement, requests for exclusion from the Class, and the filing of papers in support of the Settlement, the Plan of Allocation, and any application for attorneys' fees and reimbursement of expenses.

Furthermore, the Preliminary Approval Order instructed Lead Counsel to disseminate the Notice Packet. The Claims Administrator, on behalf of Lead Counsel, mailed 17,889 Notice Packets to Settlement Class Members by first-class mail, postage prepaid. Fraga Decl. at ¶7. Furthermore, since April 24, 2017, the Claims Administrator has maintained a dedicated toll-free telephone number (844-634-8908) with interactive voice response ("IVR") to provide answers to frequently asked questions ("FAQs") and to allow potential Settlement Class Members to request Notice Packets. *Id*. at ¶10.  To date, the toll-free number has received no calls. *Id*. GCG also maintains a Settlement fax number (855-409-7129) and a Settlement email inbox (Questions@EnergyRecoverySecuritiesLitigation.com) to handle various inquiries from potential Settlement Class Members. *Id*. Also on April 24, 2017, the Claims Administrator caused the Summary Notice of the Settlement to be published in the national edition of *Investor's Business Daily*. Finally, the Claims Administrator posted the Stipulation, Preliminary Approval Order, Notice, Proof of Claim and Summary Notice to the Settlement website, www.EnergyRecoverySecuritiesLitigation.com. *Id*. at ¶11.

Lead Counsel and the Claims Administrator continue to provide notice to the Class. In accordance with the Preliminary Approval Order, Lead Counsel will file a final affidavit attesting to the proper mailing and publishing of notice of the settlement. Preliminary Approval Order at ¶9(c). The last day to file objections to any aspect of the Settlement is August 4, 2017. As of July 20, 2017, neither Lead Counsel nor the Claims Administrator have received any objection to the Settlement or

6

1   the Plan of Allocation. Fraga Decl. at ¶13. Only one request for exclusion has been received. *Id*. at ¶12.

2   **ARGUMENT**

3   **I.      STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS**

4           It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the

5   preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624

6   (9th Cir. 1982). Class action suits readily lend themselves to compromise because of the difficulties of

7   proof, the uncertainties of the outcome and the typical length of the litigation. *In re Omnivision Tech.,*

8   *Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *Officers for Justice*, 688 F.2d at 625).

9   "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly

10  true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

11          In approving a proposed settlement of a class action under Rule 23(e), the court must find that

12  the proposed settlement is fundamentally fair, adequate, and reasonable. *Knight v. Red Door Salons,*

13  *Inc.*, No. 08-01520, 2009 U.S. Dist. LEXIS 11149, at *7 (N.D. Cal. Feb. 2, 2009) (citing *Staton v.*

14  *Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)). The Ninth Circuit has provided a list of factors which

15  may be considered in evaluating the fairness of a class action settlement:

16              Although Rule 23(e) is silent respecting the standard by which a proposed settlement is
                to be evaluated, the universally applied standard is whether the settlement is
17              fundamentally fair, adequate and reasonable. The district court's ultimate determination
                will necessarily involve a balancing of several factors which may include, among
18              others, some or all of the following: the strength of Plaintiff's case; the risk, expense,
                complexity, and likely duration of further litigation; the risk of maintaining class action
19              status throughout the trial; the amount offered in settlement; the extent of discovery
                completed, and the stage of the proceedings; the experience and views of counsel; the
20              presence of a governmental participant; and the reaction of the class members to the
                proposed settlement.

21  *Officers for Justice*, 688 F.2d at 625; *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th

22  Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *Torrisi v. Tucson*

23  *Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

24          Therefore, "[a] settlement should be approved if it is fundamentally fair, adequate and

25  reasonable." *Torrisi*, 8 F.3d at 1375. This ultimate decision is in the "sound discretion of the district

26  courts [which] appraise[s] the reasonableness of particular class-action settlements on a case-by-case

27  basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). A presumption of fairness arises where: (1) counsel

28

7

is experienced in similar litigation; (2) settlement was reached through arms'-length negotiations; and (3) investigation is sufficient to allow counsel and the court to act intelligently. *In re Heritage Bond Litig.*, No. 02-1475, 2005 U.S. Dist. LEXIS 13555, at *11-*12 (C.D. Cal. June 10, 2005) (citing *Linney v. Ala. Cellular P'ship*, No. 96-3008, 1997 U.S. Dist. LEXIS 243000, at *16 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234 (9th Cir. 1998)). Therefore, in exercising its discretion, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Officers for Justice*, 688 F.2d at 625. As explained below and in the Apton Declaration, the application of these criteria to the Settlement supports its approval by the Court.

Moreover, in reviewing this Settlement under Rule 23, the Court should not substitute its business judgment for that of counsel who litigated the case. *See, e.g.*, *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004). Rather, the settlement should be approved if it is within a "range of reasonableness." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Thus "[t]he recommendations of Plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also Nat'l Rural*, 221 F.R.D. at 528. The presumption of reasonableness in this action is fully warranted because the Settlement is the product of arms'-length negotiations, including a mediation under Robert A. Meyer, Esq. of JAMS. *See Hughes v. Microsoft Corp.*, No. 98-1646C, 2001 U.S. Dist. LEXIS 5976, at *17 (W.D. Wash. Mar. 21, 2001) (citing *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (finding mediator's involvement supports settlement approval). Finally, it is the considered judgment of counsel for the parties that this Settlement is a fair, reasonable, and adequate resolution of the litigation. *See Hughes*, 2001 U.S. Dist. LEXIS 5976, at *20-*21.

II.     **THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD FOR APPROVAL**

A.     <u>**The Parties Were Able to Assess the Strengths and Weaknesses of Their Cases**</u>

The stage of the proceedings and the amount of information available to both of the parties to assess the strength and weaknesses of their cases is one of the factors which courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego*, 213 F.3d at 459; *Lundell v. Dell, Inc.*, No. 05-3970, 2006 U.S. Dist. LEXIS 90990, at *9 (N.D. Cal. Dec. 4, 2006).

Here, Plaintiff's Counsel conducted an extensive investigation, including interviews of former employees, obtained and reviewed the extensive record of public documents describing the areas of Defendants' business touching upon the allegations in the Action, and thoroughly explored each side's claims and defenses, and participated in a mediation presided over by the Robert A. Meyer, Esq. of JAMS. The mediation session involved up-front briefing regarding the merits of the Action. As a result, Plaintiff's Counsel had a comprehensive understanding of the strengths and weaknesses of the case and sufficient information to make an informed decision regarding the fairness of the Settlement before presenting it to the Court. *See Mego Fin.*, 213 F.3d at 458.

B.     <u>**The Settlement Appropriately Balances the Risks of Litigation and the Benefit to the Class of a Certain Recovery**</u>

To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation against the benefits afforded to Class members and the immediacy and certainty of a substantial recovery. *Mego Fin.*, 213 F.3d at 458; *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd*, 485 F. Supp. at 617. In other words,

> [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.

*Nat'l Rural*, 221 F.R.D. at 526; *see also Lundell*, 2006 U.S. Dist. LEXIS 90990, at *9-*10.

In the context of approving class action settlements, courts attempting to balance these factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v.*

9

*Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977). Here, a balance of these factors weighs heavily in support of approval of the Settlement and unquestionably outweighs the distinct possibility that the Class would receive no recovery at all.

### 1.   Continued Litigation Posed Substantial Risks in Establishing Liability

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural.*, 221 F.R.D. at 526. Although progress was made in litigating this case when the parties reached the Settlement, including filing Complaints, substantial work remained, which would have prolonged the litigation. Significantly, Defendants had responded to the Second Amended Complaint with a motion to dismiss, relying on the high pleading requirements created by the Private Securities litigation Reform Act of 1995, 15 U.S.C. §78u-4. Under these pleading standards, dismissal was quite possible, even where an investigation yielded significant information in support of Plaintiff's allegations.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009). While Defendants agreed to attempt to resolve the matter through mediation before receiving any decision from the Court on the second motion to dismiss, had Defendants not agreed, there were still a number of hurdles that Plaintiff would face. Even if Plaintiff defeated the second motion to dismiss, the Court's opinion could have severely limited the scope of the statements at issue in the case or the time period at issue which would have impacted the potential damages. Moreover, Defendants had yet to answer the Complaint, no class had been certified, and certification of a class and the length of class period were not foregone conclusions. The risk of losing at the motion to dismiss stage, as well as non-certification, support the Settlement. *See Glass v. UBS Fin. Servs.*, No. 06-4068, 2007 U.S. Dist. LEXIS 8476, at *11-*12 (N.D. Cal. Jan. 26, 2007).

Further, formal discovery had not yet started in this case, as it usually follows the denial of a motion to dismiss. In a complex case like this one, the parties anticipated numerous documents would have to be produced regarding transactions over a multiple-year period, as well as numerous party and non-party depositions, which would likely take many months to complete at great time and expense to

10

the parties, especially because Energy Recovery's customers, the likely targets of third-party discovery, would each have separate counsel. After fact discovery concluded, the expert discovery process would take several additional months to complete, including exchange of reports, depositions and foreseeable *Daubert* motions. After completion of all discovery, summary judgment motions would be expected. If the Action went to trial, the parties would then prepare a pre-trial order, propose jury instructions, and file and argue motions *in limine*. *See Heritage*, 2005 U.S. Dist. LEXIS 13555, at *24. The parties would expend significant time preparing this case for a lengthy and complicated trial. Thus, the Settlement results in significant and immediate recovery, without any further risk, expense and delay that continued litigation would entail and consideration of the risk, expense, complexity and likely duration of this Action supports approval of the Settlement.

### 2. Continued Litigation Posed Substantial Risks in Proving Damages

Plaintiff's Counsel are mindful that if they were able to overcome the obstacles to establishing liability at trial, they would still face the additional risks of proving damages. Plaintiff's Counsel believe that, if they prevailed on the liability issue at trial, they would be able to establish damages in the amount estimated by Plaintiff's damages expert. However, Plaintiff's Counsel are mindful of Defendants' arguments challenging Plaintiff's claims throughout the litigation, as well as the amount of damages.

Expert testimony is necessary in order to establish the amount – and, indeed, the existence – of actual damages. *See, e.g., In re Novatel Wireless Secs. Litig.,* No. 08cv1689, 2013 U.S. Dist. LEXIS 16986, *7-*8 (S.D. Cal. Feb. 7, 2013). Such an expert evaluation is based not only on stock price history but on other more elusive factors including corporate asset value, cash flow, income and growth prospects for the future, industry and economic trends, the quality of management, the nature and amount of liabilities, and many other variables. At trial, Plaintiff would likely have faced a motion *in limine* by Defendants to preclude Plaintiff's damage expert's testimony under *Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579 (1993), and risked a decision that the expert's valuation model might not be admissible in evidence. *See In re Novatel,* No. 08-1689, 2013 U.S. Dist. LEXIS 16986, at *12-*15 (ruling inadmissible the Plaintiff's expert testimony concerning damages).

11

If Plaintiff survived the *Daubert* motion, the damage valuations of Plaintiff's and Defendants' experts would vary substantially. In the "battle of experts," it is impossible to predict with any certainty which arguments would find favor with the jury. *See In re Warner Commc'ns Sec. Litigation*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad of non-actionable factors such as general market conditions"). Thus, even if Plaintiff prevailed on the issue of liability, significant additional risks would remain in establishing the existence of damages.[1]

Accordingly, although Plaintiff's Counsel believe that the case is meritorious, their experience has taught them how the risks discussed above can render the outcome of a trial extremely uncertain. *See In re Heritage*, 2005 U.S. Dist. LEXIS 13555 at *25 ("Settlement is favorable because "while Plaintiff are confident of the strength of their case, it is imprudent to presume ultimate success at trial and thereafter."); *In re Mfrs. Life Ins. Co. Premium Litig.*, MDL No. 1109, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 21, 1998) ("even if it is assumed that a successful outcome for Plaintiff at summary judgment or at trial would yield a greater recovery than the Settlement – which is not at all apparent – there is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceedings").

### 3.   Collectability Risks to the Class

Regardless of the amount of damages that might be awarded at trial and maintained through subsequent appeals, there was a substantial risk that the Plaintiff and the Class would be unable to collect more than a fraction of any such damages award from Defendants. Any recovery in this Action must come from the Defendants or from any available insurance coverage. Insurance coverage potentially available to satisfy any judgments against Defendants would be reduced over the course of

---

[1]   Moreover, even if Plaintiff prevailed with the jury the Class would likely face the ongoing uncertainty and risks from a motion for judgment notwithstanding the verdict and an appeal.   *See Glass,* 2007 U.S. Dist. LEXIS 8476, *11-*12; *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing on appeal an $81 million jury verdict and dismissing securities action with prejudice); *In re Apple Computer Sec. Litig.*, No. 84-20148, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (district court overturned jury verdict for damages exceeding $100 million).

the litigation through the payment of the fees and expenses of Defendants' attorneys, and would have been further reduced if the Action had proceeded to trial and through any inevitable subsequent appeals. Thus, it is highly unlikely that Plaintiff would have ultimately been able to recover significantly more in damages from the Defendants and their insurers than the $3,850,000 recovery for the Class achieved in the Settlement. This issue contributes heavily to the fairness and adequacy of the proposed Settlement. *See, e.g., In re Qwest Commc'ns. Sec. Litig.,* No. 01-01451, 2006 U.S. Dist. LEXIS 71039, at *19 (D. Colo. Sept. 28, 2006) (the potential inability to collect a damages award from a corporation weighs in favor of approval of settlement). Therefore, careful consideration of the above risks supports approval of the Settlement as fair, adequate, and reasonable.

### 4.    Balancing the Certainty of an Immediate Recovery Against the Expense and Likely Duration of Protracted Litigation Favors Settlement

The immediacy and certainty of a recovery is a factor for the Court to balance in determining whether the proposed Settlement is fair, adequate, and reasonable. *See Heritage*, 2005 U.S. Dist. LEXIS 13555, at *27 ("Settlement of this case has distinct advantages over the speculative nature of litigating this case to a verdict."); *see also Girsh*, 521 F.2d at 157. Courts consistently have held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Officers for Justice*, 688 F.2d at 626. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural*, 221 F.R.D. at 526.

Approval of the Settlement will mean a present recovery for eligible claimants. If not for this Settlement, there would have been continued delay to trial as the case proceeded with the ongoing motion to dismiss briefing process, formal discovery, class certification discovery/briefing and summary judgment, the outcome of which is far from certain. And, even if successful at trial, additional delay through post-trial motions and the appellate process as well, could force Class members to wait many more years for any recovery, further reducing its value. *See Omnivision*, 559 F. Supp. 2d at 1042 (recognizing the delay and risk inherent in an appeal by defendants and "an

1   immediate and certain award" supports approval of a settlement versus the risk of receiving nothing

2   from continued litigation). Accordingly, settlement of this litigation will ensure a recovery, eliminating

3   the risk of no recovery at all. The Settlement is, therefore, in the best interest of the Class.

4          As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise,

5   "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624.

6   "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of

7   cost and elimination of risk, the parties each give up something they might have won had they

8   proceeded with litigation . . . ." *Id.*; *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 19 (N.D. Cal.

9   1980) ("[a]s a quid pro quo for not having to undergo the uncertainties and expenses of litigation, the

10  Plaintiff must be willing to moderate the measure of their demands."). Accordingly, the fact that the

11  Class potentially could have achieved a greater recovery after trial does not preclude the Court from

12  finding that the Settlement is within a "range of reasonableness" that is appropriate for approval. *See,*

13  *e.g., Warner Commc'ns*, 618 F. Supp. at 745.

14                  **C.       The Settlement Amount Supports Approval of the Settlement**

15         "An important consideration in judging the reasonableness of a settlement is the strength of

16  the Plaintiff's case on the merits balanced against the amount offered in the settlement. However, in

17  balancing, a proposed settlement is not to be judged against a speculative measure of what might have

18  been awarded in a judgment in favor of the class." *Nat'l Rural*, 221 F.R.D. at 526. Balanced against

19  all of the risks outlined above and in the Apton Declaration, Plaintiff have recovered a $3,850,000

20  cash settlement plus interest. Plaintiff's expert estimated potential recoverable damages for the Class

21  at $17 million. This figure was based upon the conclusion that approximately 23 million shares of

22  Energy Recovery stock were damaged, *i.e.*, that 23 million shares were purchased during the class

23  period at inflated prices and then held during the corrective disclosures when the inflation was

24  removed from the market. The Settlement, therefore, represents more than 22% of the total damages

25  that their expert estimated could have been recovered if Plaintiff were completely successful on all

26  issues of liability and damages in the Action. While "[i]t is well-settled law that a cash settlement

27

28

amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair," *Officers for Justice*, 688 F.2d at 628,[2] the percentage recovery is within the range of settlements that have received approval by the courts. *See, e.g.*, *Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 24, 2005) (approving settlement representing 3.8% of Plaintiff's estimated damages).[3] In securities class actions with estimated damages less than $20 million, median settlements have historically been 18.4% of estimated damages.[4] Accordingly, the proposed settlement provides an above-median recovery.

Moreover, in securities actions, following the verdict on liability, the practice is for a claims administrator to require each class member to file a claim and subject himself to potential attack on issues such as reliance, before the total amount of Defendants' actual liability is determined. Therefore, the $17 million figure arrived at by Plaintiff's expert not only assumes complete success on all issues of liability and damages, but also assumes that all members of the Class who can make a claim for payment will claim. That, however, is almost never the case.

In addition, Plaintiff's Counsel is cognizant of the fact that assuming success on all issues of liability and damages would be imprudent. Accordingly, the "dollar amounts are judged not in comparison with possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of Plaintiff's case." *In re Union Carbide Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989). Thus, the arguable possibility that the Class "might have received

---

[2] *See also Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) (noting that there is no reason, at least in theory, why a satisfactory settlement could not amount to a "hundredth or even a thousandth of a single percent of the potential recovery")

[3] *See also* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements—2016 Review and Analysis* (Cornerstone Research 2016) (showing that settlements as a percentage of estimated damages ranged between 1.8% and 2.9% between 2007 and 2016).

[4] Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review* (NERA 2016) (showing between January 1996 and December 2016 that the median settlement value of securities class actions as a percentage of investor losses was 18.4% and 8.6% for cases with investor losses less than $20 million and between $20 million and $49 million, respectively).

more if the case had been fully litigated [is] no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992); *see also In re Synthroid Mktg. Litig*, 264 F.3d 712, 716 (7th Cir. 2001) (affirming settlement over objection that "the settlement could have been larger" where the Plaintiff "would have had a headache trying to get any judgment on the merits"). If this Action was fully litigated, Class members might have received substantially less than the proposed Settlement, or, possibly, nothing at all. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). Plaintiff's Counsel, as a fiduciary to the Class, must always be mindful of that possibility in considering whether or not to accept a settlement and so too should the Court in considering it approval.

### D. The Recommendation Of Experienced Counsel Heavily Favors Approval Of The Settlement

Highly experienced counsel, negotiating at arms'-length, have weighed the factors discussed above and endorse the Settlement. "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Adoma v. Univ. of Phoenix, Inc.*, No. 10-0059, 2012 U.S. Dist. LEXIS 181281, at *24 (E.D. Cal. Dec. 18, 2012); *see also Ellis*, 87 F.R.D. at 18. In approving a settlement, courts often focus on the "negotiating process by which the settlement was reached." *Warner Commc'ns.*, 618 F. Supp. at 741. Here, the parties engaged in arms'-length negotiations, including an intensive mediation session, before Settlement was ultimately reached. "[T]he fact that the settlement agreement was reached in arm's length negotiations . . . create[s] a presumption that the agreement is fair." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

This Action has been litigated and settled by experienced and competent counsel on both sides of the case. The law firms that represented the Class are well known for their experience and success in complex and class action litigation. That such qualified and well-informed counsel endorse the Settlement as being fair, reasonable and adequate to the Class heavily favors this Court's approval of the Settlement.

### E.    Reaction of the Class Supports Approval of the Settlement

It is established that the absence of a large number of objectors to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members. *See In re Skilled Healthcare Group, Inc.,* No. 09-5416, 2011 U.S. Dist. LEXIS 10139, at *11 (C.D. Cal. Jan. 26, 2011) ("In this case, the Court interprets the lack of anything other than a de minimus objection as ratification of the settlement terms by the class."); *see also Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *34; *Nat'l Rural*, 221 F.R.D. at 528. The Claims Administrator disseminated 17,889 Notice Packets to potential Class members; published the Summary Notice in the national edition of *Investor's Business Daily*; and has been administrating a 24-hour/7-days-per-week IVR and website to field OCR shareholder questions. Fraga Decl. at ¶¶4-11. As of July 20, 2017, neither Lead Counsel nor the Claims Administrator have received any objections. Fraga Decl. at ¶13. Only one request for exclusion has been made and, according to the potential Class member that made the request, he did so because he did not lose any money in connection with his purchase of Energy Recovery Stock. Fraga Decl. at ¶12; Apton Decl., Exhibit B. The time period for objecting to the Settlement expires on August 4, 2017. Lead Counsel will file an updated affidavit as to notice procedures and objections on August 10, 2017, in accordance with the Preliminary Approval Order.

### III.    THE PLAN OF ALLOCATION IS FAIR AND RESONABLE AND SHOULD BE APPROVED BY THE COURT

Assessment of a plan of allocation of settlement proceeds in a class action under Fed. R. Civ. P 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate. *Class Plaintiff v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *In re Omnivision Tech.*, 559 F. Supp. 2d at 1045. "However, an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Heritage*, 2005 U.S. Dist. LEXIS 13555, at *38. There is no requirement that a settlement must benefit all class members equally. *See Mego*, 213 F.3d at 461; *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members received different levels of compensation and finding that no subgroup was treated unfairly); *S.C. Nat'l Bank v. Stone*, 749 F.

17

Supp. 1419, 1437 (D.S.C. 1990) (approving settlement where some class members did not share in recovery). These decisions acknowledge that the goal of a distribution plan is fairness to the class as a whole, taking into account the various disclosures during the Class Period and establishing a claim value based on the market's reaction to each new piece of information.

In order to develop a fair distribution plan, Lead Counsel developed the Plan of Allocation based on the damages analysis and distribution of estimated damages rendered by Plaintiff's damages expert earlier in the litigation. This analysis was, at the time the Settlement was reached, the best estimate of damages that Plaintiff had and is still the analysis that Plaintiff would likely have presented to the trier of fact.

The Plan of Allocation, of course, like Plaintiff's estimate of Class-wide damages itself, assumes complete success on all aspects of liability and damages at trial and post-trial appeals. Thus, the Plan of Allocation credits all Class members with the best possible result they could have achieved based on the number of Energy Recovery shares they purchased, their cost basis in those shares, and the timing of their purchases and sales of Energy Recovery securities. Shaping each class member's recovery around these factors is only fair. *Skilled Healthcare,* 2011 U.S. Dist. LEXIS 10139 at *12.

The Plan of Allocation, in full and complete detail, was included in the Notice Packet mailed to Class members and, as of July 20, 2017, no one has objected. Based upon the foregoing, Plaintiff and Plaintiff's Counsel submit that the Plan of Allocation will equitably apportion the net Settlement proceeds among all eligible Class members using the principles set forth in the case law cited above, and should be approved.

## IV.     CERTIFICATION OF THE SETTLEMENT CLASS UNDER FED. R. CIV. P.23 IS APPROPRIATE

Because the Settlement was reached prior to a decision by the Court regarding class certification, Defendants have agreed to certification of the Class for settlement purposes. Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and, in addition, the action qualifies under one of the subdivisions of Rule 23(b). Although certification of the Class is requested solely to effectuate the Settlement, as set forth below, all of the requirements of Rule 23 are easily met.

### A.   The Class Is Sufficiently Numerous

Rule 23(a) first requires that the proposed class be so numerous that joinder of all members is difficult or impracticable. Fed. R. Civ. P. 23(a)(1). Here, joinder is certainly impracticable. *See In re THQ Inc. Sec. Litig.*, No. 00-1783, 2002 U.S. Dist. LEXIS 7753, at *9-*10 (C.D. Cal. Mar. 22, 2002). While the precise number of Energy Recovery shareholders is unknown, the Claims Administrator mailed 17,889 Notice Packets to Settlement Class Members. Fraga Decl. at ¶7. Accordingly, Plaintiff believe there are thousands of members in the Class, which easily satisfies numerosity.

### B.   Common Questions Of Law Or Fact Exist

Rule 23(a)(2) requires that there be "questions of law or fact common to the [members of the] class." Fed. R. Civ. P. 23(a)(2). It is well established that the commonality requirement is satisfied if the claims of the prospective class share even one central question of fact or law. *See Rodriguez v. Hayes,* 591 F.3d 1105, 1122 (9th Cir. 2010); *Hanlon*, 150 F.3d at 1019-1020. Accordingly, common questions of law and fact exist in this Action such that certification as a class action is appropriate. This case presents numerous common questions of both law and fact. Here, questions of law and fact common to all Settlement Class Members include:

a)   Whether the federal securities laws were violated by Defendants' acts as alleged in the Complaint;

b)   Whether Defendants made material misrepresentations and omissions concerning the operability and salability of the Company's core products;

c)   Whether Defendants made material misrepresentations and omissions concerning the Company's "pipeline" of sales to customers;

d)   Whether Defendants acted with the requisite state of mind in misrepresenting or failing to disclose material facts;

e)   Whether the corrective disclosures of the prior misrepresentations and omissions caused a decline in the market price of Energy Recovery, and if so, how much; and

f)   Whether the Settlement Class Members have sustained damages and, if so, the appropriate measure thereof.

19

### C.      Plaintiff's Claims Are Typical Of Those Of The Class

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiff, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Here, Lead Plaintiff's claims are similar to the claims of the other Settlement Class Members. Defendants' alleged course of conduct described in the Complaint uniformly affected all Settlement Class Members, as they each allegedly suffered economic injury from the decline in market value following the corrective disclosures. Lead Plaintiff's claims are typical of the other Settlement Class Members because, like all other Settlement Class Members, they allegedly were injured when the truth about the Company's "core products" and "pipeline" was revealed. Thus, the typicality requirement of Rule 23(a)(3) is met.

### D.      Plaintiff Is an Adequate Representatives Of The Class

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Representation is fair and adequate if (1) the named plaintiff and his counsel are able to prosecute the action vigorously and (2) the named plaintiff does not have conflicting interests with the unnamed class members." *In re Toyota Motor Corp. Unintended Acceleration Mktg.*, No. 10-2151, 2012 U.S. Dist. LEXIS 183941, at *211 (C.D. Cal. Dec. 28, 2012); *Ellis*, 657 F.3d at 985. "The Ninth Circuit has found representation adequate where (1) counsel for the class is qualified and competent, (2) the representatives' interests are not antagonistic to those of the absent class members, and (3) it is unlikely that the action is collusive." *THQ*, 2002 U.S. Dist. LEXIS 7753, at *20.

Here, there are no apparent conflicts of interest between the Lead Plaintiff and the absent Settlement Class Members. Indeed, Lead Plaintiff has been committed to the vigorous prosecution of this action from the outset and has reached a resolution that he believes is in the best interests of the Settlement Class. Lead Plaintiff has shown that he is more than an adequate representative. Moreover, the Court previously determined that Lead Counsel, Levi & Korsinsky LLP, is qualified to represent the Settlement Class.

### E.      The Requirements Of Rule 23(b)(3) Are Also Satisfied

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem*, 521 U.S. at 591-94. The Action easily meets Rule 23(b)(3)'s requirements. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. In analyzing whether common questions predominate, the Court must evaluate whether proving the elements of the Plaintiff's claims can be done through common questions of fact or law, or whether the proof will be overwhelmed with individual issues. *See Hanlon*, 150 F.3d at 1022.

Courts generally find that securities fraud class actions easily satisfy the predominance requirement. *See THQ*, 2002 U.S. Dist. LEXIS 7753, at *30 ("Plaintiff's claim – which is based on a series of misrepresentations and market manipulations – clearly satisfies the requirement that common questions predominate over those affecting individual members.") (citing *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988)). In this case, the common questions of law and fact identified above predominate because the proof for the claims of misrepresentation, materiality, reliance and Defendants' scienter are all based on a common nucleus of fact and common course of conduct.

The second prong of Rule 23(b)(3) is essentially satisfied by the Settlement itself. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." 521 U.S. at 620. Thus, any manageability problems that may have existed here - and Plaintiff know of none - are eliminated by the Settlement. Accordingly, it is appropriate to certify this litigation as a class action. This case easily meets Rule 23(b)(3)'s requirements.

### 1.    Common Legal and Factual Question Predominate

"Predominance is a test readily met in certain cases alleging . . . securities fraud . . . ." *Amchem*, 521 U.S. at 625. In this securities action, Defendants' alleged liability arises from their conduct with respect to statements made about Energy Recovery's "core products" and "pipeline."

21

Whether Defendants' publicly disseminated releases and statements during the Settlement Class Period omitted and/or misrepresented material facts is the central issue in this case and predominates over any individual issue that theoretically might arise. *See Hanlon*, 150 F.3d at 1022 (stating that Rule 23(b)(3) is satisfied where "[a] common nucleus of facts and potential legal remedies dominates [the] litigation"). Thus, the predominance requirement is satisfied here.

### 2. A Class Action is the Superior Means to Adjudicate Lead Plaintiff's and Settlement Class Members' Claims

The second prong of Rule 23(b)(3) is essentially satisfied by the proposed Settlement itself. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)). Thus, any manageability problems that may have existed here—and Lead Plaintiff knows of none—are eliminated by the Settlement. In any event, given the alternatives, e.g., unnecessarily burdening the judiciary with numerous actions involving relatively small amounts of damages, which "would prove uneconomic for potential Plaintiff" where "litigation costs would dwarf potential recovery," resolving this case on a class-wide basis is clearly preferable. *Hanlon*, 150 F.3d at 1023.

### V. THE NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS

Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise. The notice procedure sought to reach the greatest number of Class members possible. Pursuant to the Preliminary Approval Order, the Claims Administrator disseminated 17,889 Notice Packets to potential Class members and nominees. Fraga Decl. at ¶7. In addition, the Claims Administrator published the Summary Notice in the national edition of *Investor's Business Daily* on April 24, 2017 and, since that same date, has been administrating a 24-hour/7-days-per-week IVR and website to field Energy Recovery shareholder questions. Fraga Decl. at ¶¶9-11. As of July 20, 2017, neither Lead Counsel nor the Claims Administrator have received any objections. Fraga Decl. at ¶13. This notice program was clearly "the best notice practicable under the circumstances including individual notice to

22

all members who can be identified through reasonable effort," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974), and meets the requirements of Fed. R. Civ. P. 23(c) and (e) and due process. *See, e.g.*, *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 945-47 (10th Cir. 2005) (finding notice program akin to the instant one satisfied due process); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

The Notice was also clearly sufficient with respect to its content. *See Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983) (notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them . . . ."). Courts have repeatedly sustained notices in cases where the notice included only very general information. *See, e.g.*, *In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1361-62 (9th Cir. 1979); *Mendoza v. United States*, 623 F.2d 1338, 1351-52 (9th Cir. 1980).

Here, the Notice detailed the Settlement and the releases that would be exchanged; summarized the history of the litigation; described the parties and the Class; discussed the settlement negotiations; detailed the Plan of Allocation; detailed the maximum amount that Plaintiff's Counsel would seek in attorneys' fees and reimbursement of expenses for prosecuting the Action; described Class members' right to request exclusion from the Class or appear through personal counsel of their choosing and/or to object to the Settlement, Plan of Allocation and/or request for attorneys' fees and reimbursement of expenses, the deadlines for asserting these rights and procedures for doing so; and provided addresses, a toll-free telephone number and a website where Class members could obtain additional information. The Notice also contained a statement of the average per share amount that the Settlement represents to the total number of damaged shares in the Class; a statement that there is no agreement on the amount of damages; identification of the attorneys for the class; and the reasons for the Settlement. Accordingly, the notice to the Class met all requirements of Rule 23(c) and (e), 15 U.S.C. §78u-4(a)(7) of the PSLRA, and due process.

## **CONCLUSION**

For the reasons set forth above and in the Apton Declaration, Plaintiff and Plaintiff's Counsel

23

submit that: the Settlement is fair, reasonable and adequate and meets the most stringent requirements for Court approval under Rule 23(e), and it should be approved by the Court; the Plan of Allocation is fair and equitable and should be approved; and the Class meets all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3), and it should receive final certification.

DATED: July 21, 2017                    Respectfully submitted,

                        By:    /s/ Adam Apton

                               Nicholas I. Porritt
                               Adam M. Apton
                               LEVI & KORSINSKY LLP
                               1101 30th Street NW, Suite 115
                               Washington, DC 20007
                               Telephone: 202-524-4290
                               Facsimile:  202-333-2121

                               *Attorneys for Lead Plaintiff Henry Low
                               and Lead Counsel for the Proposed Class*

MPA ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL
Master Docket No. 3:15-CV-00265-EMC